FILED
IN CLERKS OFFICE

2020 OCT 20 PM 1: 30

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---------------------------------------------------x

RAHUL CHATURVEDI,

                Plaintiff,                Case No.

v.

                                  **COMPLAINT**

SIDDHARTH SIDDHARTH,                JURY DEMAND

RAHUL SIDDHARTH,

NARINDER THIND,

MEERA SIDDHARTH,

JOHN DOE,

JANE DOE, Inc.

                Defendants.

---------------------------------------------------x

Plaintiff, Rahul Chaturvedi, for his Complaint against defendants, states and alleges as follows:

## Parties

1. Plaintiff, Rahul Chaturvedi, is an individual domiciled in the State of Massachusetts, who resides at 26 Norris Path, East Falmouth, MA 02563.

2. Upon information and belief, defendant Siddharth Siddharth (herein Def. A), is an individual domiciled in the State of Massachusetts, whose actual place of residence and/or business is located at 283 Weymouth Street, Holbrook, MA 02343-1228.

3. Upon information and belief, defendant Rahul Siddharth (herein Def. B), is an individual domiciled in the State of New Jersey, whose actual place of residence and/or business is located at 415 Ridgewood Ave, Glen Ridge, NJ 07028-1617.

4. Upon information and belief, defendant Narinder Thind (herein Def. C), is an individual domiciled in the State of Massachusetts, whose actual place of residence and/or business is located at 140 Kilkore Dr, Hyannis, MA 02601-6229

5. Upon information and belief, defendant Meera Siddharth (herein Def. D), is an individual domiciled in the State of Massachusetts, whose actual place of residence and/or business is located at 283 Weymouth Street, Holbrook, MA 02343-1228.

6. Upon information and belief, defendant(s) Jane Doe, Inc (herein Def. E) are businesses and corporate or asset structures which have unjustly enriched and hold assets of the forementioned defendants. Allegations with particularity upon suitable discovery is required.

7. Upon information and belief, defendant(s) John Doe, (herein Def. F) are individuals who have engaged in directly or indirectly executing and/or furthering crimes being alleged by the Plaintiff.

## Jurisdiction and Venue

This Court has subject matter jurisdiction in this action due to the diversity of the citizenship of the parties, pursuant to 28 U.S.C. § 1332(a)(1), and venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

**Exigent Circumstances of the Instant Pro se Complaint**

8.  Plaintiff is a defendant in Barnstable Superior Court against Def A. (BACV1772-00144) and is on the threshold of a repeat of massive financial loss from a previous bankruptcy (Bankruptcy Court of Massachusetts 07-16483 Neena and Rahul Chaturvedi–filed in large part to the actions of Defendants previously and which have continued to this day.

9.  Plaintiff has been caused to spend about $50,000 in legal fees during the 2019 only to see Plaintiff's attorney silent in a summary judgment hearing in a converted Rule 56 hearing on August 8, 2019. After engaging in the instant matter since July 2017 Attorney filed an affidavit to claim a busy schedule and all relevant affirmative defenses and counterclaims had not been asserted because details of the case were buried in his email. A transcript of the court session stipulates to anguished statements in hearing. (See Exhibit A – Court Transcript). Plaintiff's attorney denied filing an interlocutory appeal and instead proceed with a much overdue discovery citing that I will have my day in court and should not worry.

10. Plaintiff's attorney was allowed to withdraw on August 27, 2019 and Plaintiff allowed to be pro-se defendant.

11. The remedy at law for the Plaintiff rests within the jurisdiction of the US

District Court.

12. The Defendants' carefully executed legal strategy in Superior court and together with other actions of court are hidden in plain sight. (See Exhibit B – Docket Text from 1772CV00144).

13. Plaintiff's failure to seek injunctive relief and/or transfer of the cause of action in Superior Court forebodes a repeat of actions, Plaintiff suffered in 2007, and an emergency bankruptcy filing appears to be the only other remedy available.

14. Defendants over the last 14 years have been relentless, pernicious, and have worked within the cover of applicable law, engaged in additional malicious prosecutions, and opportunistically recruited other agents in their cabal, and even resulted in a Plaintiff's attorney being unable to serve Plaintiff's interests as a Defendant in 1772CV00144).

15. This complaint has been prepared based on the outcome of a hearing on October 16, 2020 in 1772CV0014, and later that evening Def. A submitted an added exhibit for proposed trial. This complaint has been drafted and being filed by pro-se Plaintiff with only a few days of preparation. Additional Exhibits, Legal Argument, Memorandum of Law and upon docketing a Motion for Injunctive Relief are likely to be filed in short order.

## Background

16. Plaintiff is a medical doctor and researcher, trained in hospitals of Johns Hopkins, Tufts, and Harvard Medical School. The United States Govt. awarded an exceptional merit award to Plaintiff in 1995 for his work and research at the Brockton/West Roxbury VAMC and additional research in Cardiology at Massachusetts General Hospital and Brigham

and Women's Hospital. (See profile at http://rahulchaturvedi.com)

17.     Plaintiff and his wife are medical doctors and were in practice in Cape Cod. Plaintiff had closed on a purchase of real property over 7 acres at $4.5 M on or about April 2005 with alternative high-interest money lenders. Implementation of a successful business plan had allowed Plaintiff to secure refinancing of $6.5 M from a hedge fund and subsequently with the proposed urgent care center in a multispecialty medical center in a care services starved Cape Cod, was to execute a proposed USD 100 M in revenue in 5-years. Together with a pending proposal with the then Governor Romney, Plaintiff was to launch an affordable HMO. (Later on, that license was awarded to BMC and Neighborhood Health Plan.)

18.     Plaintiff was engaged in expanding and building out a medical facility. In terms of square footage, it was the largest single structure offering medical care and privately owned in the Cape Cod region and rapidly growing in patient volume.

19.     Def. A and Def. C induced Plaintiff to enter into a real estate transaction for the purchase of residential real estate at 89 Old Hyannis Road, Yarmouthport, MA for a sum of $960,000 on April 13, 2006. $ 750,000 in cleared funds were paid to seller Def. A, out of which the alleged profit proceeds of the transaction of $250,000 were to be divided equally. Plaintiff would occupy the real estate as primary residence and pay the mortgage on a monthly basis. Defendant C would secure the mortgage on his credit and sign the loan note as the Borrower. Defendant C somehow did not have to pay any down-payment in an arrangement with the jumbo-loan mortgage lender.

20.     Def. A on the day of closing made an emergency request a personal loan of approximately $25,000 to be returned within a month of closing as a favor to help with closing costs of the seller Def. A.

21. Def. A had previously taken a $50,000 check post-dated by 6 months so it could allow Def. A to meet his creditors and show that he was finally able to his turn around. Further, Def. A would simply hold the check and not deposit it. In about 6 months, profits due to the Plaintiff would be returned along with the check. In return for this accommodation Def. A would complete the remaining work at the new construction.

22. During the next six months, an avalanche of baseless rumors of financial wrongdoing, hidden assets, and other wrong behaviors of the Plaintiff surfaced.

23. While mourning the recent loss of Plaintiff's father earlier in the year, in Nov 2006, Plaintiff and his wife gave birth to their baby daughter. On or about December 2006, Plaintiff requested his profit proceeds from the real estate transaction and return of the check of $50,000. Citing personal financial difficulties, Def. A claimed that he will not be able to release profits since the IRS had frozen his accounts. Instead Def. A and C presented to the Plaintiff should evacuate the residence since Def. C wanted to occupy the property at 89 Old Hyannis Road.

24. Def. A further deposited the check for $50,000 without notice and caused the check to return. On March 1, 2007, Def. A filed in Superior Court 0772CV00107. Line 1 of the Verified Complaint was that Def. A had loaned the Plaintiff $50,000. On March 7, 2007 caused an asset freeze of Plaintiff's and his business accounts and proceeded to put a lien on the Plaintiff's medical building triggering a foreclosure clause in favor of the first and second mortgage holders.

25. In a sad irony, it was not until Sep. 20, 2019, that in a sworn testimony in a deposition in 1772CV00144, after Def. A had secured summary judgment in 1772CV00144, and was confident that previous actions did not matter in a related new promissory note, Def.

2

A affirmed that there was no loan given and further that the allegation in the verified complaint in 0772CV00107 was incorrect.

26. A toxic environment in Hyannis caused a flurry of lawsuits. Innuendoes and false news in local newspaper which named Def A, C, and others created a spell of doom on the new growing medical practice.

27. The plaintiff, in an effort to save the medical center building and their primary asset filed for a chapter 11 bankruptcy. Defendants and others caused misrepresentations in the bankruptcy court and caused a conversion of the Chapter 11 to Chapter 7 to liquidate the medical center building asset. After spending nearly $75,000 in legal fees, Plaintiff was forced to represent himself in bankruptcy pro-se.

28. The Defendants in various roles further created toxic bankruptcy hearings. Engaged with the Chapter 7 Trustee on the one hand to give false information about the Plaintiff, while on the other conducted a false-flag cover raid of Plaintiff's mother's place of business in Gurgaon India on April 10th 2008, 3.30 PM Indian Standard Time. The perpetrators claimed to be working for FBI in connection with Plaintiff demanded to see financial and business records and after physical assault made out with documents and software. Perpetrators were prevented from visiting Plaintiff's mother at her residence by the staff on site. On a quick verification neither the Police Commissioner in Gurgaon, nor the US Trustee vouched for any knowledge of this action.

29. Subsequently the Chapter 7 Trustee citing documents, allegedly proffered by the Defendants, and misrepresenting the testimony and accounting caused an adversary action and an eventual denial of discharge of the Plaintiff from the bankruptcy 07-16483.

30. Continued hostility and relentless toxic behavior were wrongfully hurled on

Plaintiff. On Nov 10, 2008, Defendants were quoted in the local newspaper that Plaintiff was a criminal and belonged in jail. (See News article sourced from a prominent newspaper in Cape Cod: https://callcenterinfo.tmcnet.com/news/2008/11/10/3774672.htm)

31. On or about May 24, 2010, Def. A reinstated the Superior Court action 0772CV00107. Upon receipt of notice the anguished and resource deprived Plaintiff executed a promissory note (Exhibit to be provided) in favor of Def. A with the understanding that physical harm and threats would be avoided by occasional cash payments and the Defendants would forbear on collecting on the Promissory Note and further this will allow time for Plaintiff's financial rehabilitation from the massive loss after learning a lesson on the strength and reach of the Defendants.

32. Upon information from unknown sources, and without any notice or communication with Plaintiff, Def. A filed an action in Barnstable SS 1572CV00120 on March 11, 2015 against the Plaintiff for default on the previous Promissory Note. Upon the shock of receipt of the summons on May 15, 2015(while Plaintiff was on the verge of a large transaction in Singapore; a predicate knowledge of this fact, confirmed by Def. A during the deposition on September 20, 2019), Def. A agreed to settle the new transaction upon payment of $10,000 in cash, and upon wire transfer of $25,000 in Def. B's account. 1572CV00120 was dismissed on May 22, 2015. A new promissory note (Exhibit to be provided) in the amount of $53,000 was executed by Plaintiff in favor of Def. A with the previously repeated assurances of forbearance and that Def. B, Def. C, and Def. D and others needed to be placated and Def. A was batting for Plaintiff.

33. The gravamen of the entire set of circumstances, and actions as proven by texts, emails is that Plaintiff under various pretexts and hardships, and blame on his partners who

2

wanted to see better performance from me, as my savior, fraudulently induced Plaintiff to wire $25,000 to Def. B's Bank of America account and provide documentation that the payment was made on June 15, 2015.

34. Def. A filed 1772CV00144 on April 6, 2017 alleging default on the May 15, 2015 Promissory Note.

35. On July 24, 2017, upon receipt of notice of 1772CV00144, Plaintiff filed an answer at the insistence of Def. A, stating that Plaintiff should affirm the invoice date of $25,000 of June 15, 2017 and that an amicable settlement was to be arranged.

36. Def. A's assured good faith by arranging a settlement meeting on October 24, 2017, at the office of the attorney for Def A. Attorney Michael Stusse, Def. A, and the Plaintiff attended. The meeting became contentious when the Def A. refused to give consideration for the $25,000 wired to Def. B's account. Further, Def A, then insisted that Plaintiff's wife would need to sign on a new note as well. And, further that, the new Note to dismiss the 1772CV00144 apart from the cash payments expected, would need to calculate an interest rate of 18% as penalty.

37. Attorney Michael Stusse, for Def A, advised Def. A against the punitive interest rate calculation in the meeting. Plaintiff left the meeting without resolution.

38. On or about April 25, 2018, Attorney Michael Stusse's office called Plaintiff to request an assent on a motion wherein Attorney Stusse, citing irreconcilable differences with Def. A wished to withdraw. Plaintiff went to the office of Attorney Stusse to confirm the assent in person. Def. A was not present. The docket record allowance of Attorney Stusse's withdrawal on May 3, 2018.

39. On May 16, 2018 after some discussions, expressed that he was in extreme

financial pressure and could not afford to continue with Attorney Michael Stusse, and that has decided to once and for all settle the matter finally. He further stated that if I paid an additional $10,000 in cash, and gave $5000 in a company check, and a $25,000 check post-dated to August 30, 2018, and arranged for 40 monthly checks this entire matter since 2006 will end. Def. A offered that this accommodation was show of good faith so that I could spend the summer with mother who was visiting from India without further disturbance.

40. On May 16, 2018, a settlement agreement was signed at Starbucks in Falmouth. (See Exhibit C – Settlement Agreement).

41. Soon after leaving Starbucks, Def. A called back and advised that Def D strongly insisted on a Bank Check for the $25,000, and Def. A will be away for the summer holiday also and will return it. Def A. assured Plaintiff that the check will be returned much before the August 30, 2018 date. And that in show of good faith the 40 checks can be given in a meeting after the summer holiday. Both Plaintiff and Def. A assented to a continuance on the Rule 16 Conference scheduled for May 17, 2018. Def. A knew that the Plaintiff would be traveling soon thereafter.

42. Unbeknownst to Plaintiff, Def. A did not perform according to the settlement agreement, did not dismiss the case by May 25, 2018. The Plaintiff was unaware of the continuance would only be until June 1, 2018. Plaintiff did not know and did not appear for the June 1, 2018 continued Rule 16 hearing. From the docket record it appears that Def. A did not appear as well, which later turned out to be false per a statement of Def. A to Plaintiff.

43. Upon receipt of default of Plaintiff, on or about July 17, 2018, Attorney Peter Daigle was retained to engage with the enforcement of the settlement agreement of May 16,

2018 and dismiss the Superior Court action.

44. During the past 3 months, from the date of reinstatement, and for the next 10 months, Attorney Peter Daigle's legal fees continued to be substantial and paid, but for unclear reasons, no amended answer, counterclaims, settlement agreement was filed into the complaint. Attorney Peter Daigle assured Plaintiff that he would resolve a final amount for settlement and that I should bring a bank check to the settlement meeting.

45. During the Starbucks meeting, Def. A inquired about the business and about the projects I was working on and was curious about a lunch that I had organized at the Harvard Club with guests from the White House.

46. On August 29, 2018, Plaintiff met with Def. A in a Starbucks in Mashpee, where the Plaintiff and Def. A would go over to Attorney Peter Daigle's office and sign a final settlement agreement and that I would give a $25,000 bank check and get the $25,000 check back. I told him that I would have a stop payment put on the check. A stop payment was put on May 22, 2018 on the check#1009.

47. I explained that I cannot discuss details of the business and that we should proceed to Attorney Peter Daigle's office. I went to get coffee for the Def.A and an accompanying 8th grader, who according to the Def.A was on loan to Def. A for the summer based on an obligation that the father of the kid had towards Def. D. When I offered to purchase a drink for the kid, Def. A commented that he does not need anything.

48. With coffee in hand, as I proceeded to leave, I realized that Def.A and the kid had left and my phone was missing.

49. The gist of what followed was that not only was no settlement meeting attended to, and after trying to access the phone, and initially denying that the phone was with Def. A,

the phone was returned by Def.A to the receptionist familiar with Def. A (An entire set of emails, communications with Barnstable Police, the denial of Def. A to a police officer that he had the phone is documented in a series of emails (Exhibit to be added).

50. On October 15, 2018, Def. A filed to reinstate the case. The case was reinstated on October 16, 2018, along with an appearance of Attorney Riley for the Def. A.

51. During a Motion hearing on October 19, 2020, Def. A through his attorney proffered that above referenced Plaintiff's $25,000 check had bounced. In a filing on October 19, 2020, Def. A introduced Bank of America's non-acceptance of check#1009 as an added exhibit for the upcoming hearing on October 21, 2020.

52. The bad faith of Defendants and the documentation that they attempted to deposit Check#1009 after breaching the settlement contract with fraudulent intent portends what is likely to follow for the next decade.

53. Plaintiff and his company is on the verge of disclosing many world's firsts discoveries and inventions and preparing for a massive global launch as a result of dedicated hard work for the last 11 years.

54. The aggressive posture of the Defendants in court and outside and orchestrated damages for over 11 years have borne light to a new concerted cabal working to intentionally defraud and harm the plaintiff and his property.

## CONSTRUCTION OF LEGAL ARGUMENT FOR CAUSES OF ACTION

55. Plaintiff strives to exceed the threshold of F.R.C.P 9(b) in the post-Twombly era for fraud in civil cases. (See *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). In that case, the

Supreme Court declared that the Twombly rule applied to all federal civil cases.  Plaintiff requests forbearance to submit argument to apply Civil RICO and protections and statute of limitation related privileges.

56. Plaintiff repeats and realleges the allegations in paragraphs 1 through 54, above, as if they were fully set forth herein.

**WHEREFORE,** plaintiff, respectfully requests that the complaint be docketed, and allow a trial on the merits and all equitable, direct, consequential , and punitive relief.

Dated: October 20,2020

s/ Rahul Chaturvedi

pro-se

775 East Falmouth Hwy #351,

East Falmouth, MA 02563

Phone: 7083750070

Fax: 7083750099